IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| ADAM SOKOLOFF, | * |
| Plaintiff, | * |
| vs. | * |
| | CASE NO. 3:22-CV-12 (CDL) |
| BIO WORLD MERCHANDISING, INC. and RAJEEV MALIK, | * |
| | * |
| Defendants. | |
| | * |

O R D E R

This is an action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). Adam Sokoloff asserts that both Bio World Merchandising, Inc. and its chief executive officer, Rajeev Malik, were his "employers," that he was misclassified as an independent contractor instead of an employee, and that Defendants failed to pay him overtime wages. Sokoloff also asserts a claim for civil tax fraud under 26 U.S.C. § 7434, as well as state law claims for breach of contract and tortious interference with business expectancy. Defendants contend that the claims against Malik should be dismissed for lack of personal jurisdiction and that Sokoloff failed to state claims for civil tax fraud and tortious interference with business expectancy. Defendants further contend that after the Court decides their motions to dismiss, the Court should transfer this

action to the United States District Court for the Northern District of Texas under 28 U.S.C. § 1404(a).

For the reasons set forth below, Malik's motion to dismiss for lack of personal jurisdiction (ECF No. 32) is denied. Bio World's motion to dismiss Sokoloff's § 7434 tax fraud claim (ECF No. 33) is granted. Defendants' motions to dismiss the tortious interference claim (ECF Nos. 32 & 33) are denied, as are their motions to transfer (ECF Nos. 8 & 12).

## DISCUSSION

**I.   May the Court Exercise Personal Jurisdiction Over Malik?**

Malik seeks dismissal for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). "A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). Here, Sokoloff argues that the following facts are sufficient to establish personal jurisdiction over Malik. Bio World is a Texas corporation that provides "pop-culture merchandise to retail stores." Am. Compl. ¶¶ 6, 16, ECF No. 22. Bio World maintained an office and did business in Athens, Georgia. *Id.* ¶ 6. Malik is the chief executive officer, and he is domiciled in Texas.

*Id.* ¶¶ 8, 11.  Sokoloff was a director of sales for Bio World from December 2009 through April 2021, and he worked out of the Athens, Georgia office.  *Id.* ¶¶ 24, 28.  Until May 2020, Sokoloff was classified as an independent contractor; he was reclassified as an employee in May 2020, though his duties and job title remained the same.  *Id.* ¶¶ 26-27.  Malik managed the day-to-day operations of Bio World, supervised employees, and made employee and compensation decisions like the decision to classify Sokoloff as an independent contractor.  *Id.* ¶¶ 10-11.

Malik contends that these allegations are not enough. Serving a summons can establish "personal jurisdiction over a defendant" only if the person "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located" or "when authorized by a federal statute." Fed. R. Civ. P. 4(k)(1).[1]  When jurisdiction is based on a federal question arising under a statute like the FLSA that is silent on service of process, the courts must undertake a two-part analysis: (1) determine whether the forum state's "long-arm statute provides a basis for personal jurisdiction" and (2) decide whether "sufficient minimum contacts exist between the defendants and the forum state so as to satisfy 'traditional

---

[1] Serving a summons also establishes personal jurisdiction over a defendant in a situation that does not exist here—where the person is joined as a party under Rule 14 or 19 and "is served within a judicial district of the United States and not more than 100 miles from where the summons was issued."  Fed. R. Civ. P. 4(k)(1)(B).

3

notions of fair play and substantial justice' under the Due Process Clause of the Fourteenth Amendment." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996) (quoting *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir. 1996)); *see also Aviles v. Kunkle*, 978 F.2d 201, 203-04 (5th Cir. 1992) (per curiam) (noting that the FLSA "is silent as to service of process").

Malik asserts that personal jurisdiction is improper under both Georgia's long-arm statute and the Due Process Clause. The Georgia long-arm statute permits personal jurisdiction over a nonresident defendant who "[t]ransacts any business" in Georgia. O.C.G.A. § 9-10-91(1). There is no dispute that Bio World transacts business in Georgia because it maintains an office in Georgia, employs Georgia workers, and does business with Georgia residents. Malik does not presently dispute Sokoloff's allegations that Malik managed the day-to-day operations of Bio World, supervised its employees, and made employee and compensation decisions for workers including Georgia workers like Sokoloff. Malik contends, though, that any decisions he made about Sokoloff were in his official capacity as CEO of Bio World, not in his individual capacity, and that he thus did not personally transact business in Georgia.[2]

---

[2] Malik submitted an affidavit in support of his motion to dismiss for lack of personal jurisdiction. The Court understands that the

4

In support of the argument that he did not transact business in Georgia, Malik relies on *Canty v. Fry's Electronics, Inc.*, 736 F. Supp. 2d 1352, 1360 (N.D. Ga. 2010). There, the district court concluded that it could not exercise jurisdiction over the president of a California company simply because the company did business in Georgia. *Id.* This rule—that a nonresident individual cannot be subject to jurisdiction in a forum "based solely upon acts taken in his capacity as a corporate officer"—is commonly called the "fiduciary shield" doctrine. *Amerireach.com, LLC v. Walker*, 719 S.E.2d 489, 493 (Ga. 2011). In *Amerireach.com*, the Georgia Supreme Court rejected the "fiduciary shield" doctrine, expressly overruled the Georgia Court of Appeals precedent that the *Canty* court relied on to support its holding, and stated that *Canty* would "not be followed" by Georgia courts. *Id.* at 494. The Georgia Supreme Court reasoned that although jurisdiction over a corporate officer does not necessarily arise from jurisdiction over the corporation, personal jurisdiction extends to a corporate officer who is a "primary participant" in "an alleged wrongdoing intentionally directed at a resident of the forum

---

submission of an affidavit in this context traditionally shifts the burden back to the plaintiff to produce evidence supporting jurisdiction. Here, though, Malik's affidavit simply establishes that he did not *personally* have any contacts with Georgia apart from his work at Bio World. The affidavit does not dispute that Malik had contacts with Georgia in his official capacity as CEO of Bio World.

5

state."  *Id*. (emphasis omitted and alterations adopted) (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984)).

Sokoloff alleges that Malik, the CEO of Bio World, managed the day-to-day operations of Bio World, including its Georgia office.  Sokoloff alleges that Malik made compensation decisions regarding all Bio World employees—including the specific decision to classify Sokoloff as an independent contractor until May 2020.  And Sokoloff alleges that Malik was his "employer" within the meaning of the FLSA.  These allegations support a finding that Malik was a primary participant in Bio World's transaction of business in Georgia and that Sokoloff's claims arise from Bio World's transaction of business in Georgia.  Thus, the Georgia long-arm statute provides a basis for personal jurisdiction over Malik.

The next question is whether the Court may exercise personal jurisdiction over Malik under the Due Process Clause of the Fourteenth Amendment.  Malik's only argument is that his individual capacity contacts with Georgia are insufficient.  Malik ignores his official capacity Bio World contacts with Georgia and contends that any acts he personally engaged in as part of his duties for Bio World should not count against him in his individual capacity.  Basically, he argues that the "fiduciary shield" doctrine applies to the due process analysis.  It does not.

6

In *Calder*, the United States Supreme Court considered the question in the context of a due process challenge to personal jurisdiction. *Calder*, 465 U.S. at 788. The *Calder* court rejected the fiduciary shield doctrine, including "the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984) (citing *Calder*, 465 U.S. at 790). Under *Calder*, when officers personally engage in conduct as part of their duties for the corporation, that conduct still counts in the minimum contacts analysis even though they performed those activities as officers of the corporation. Thus, if the corporate officer is a primary participant in the activities forming the basis of jurisdiction over the corporation, the exercise of personal jurisdiction over that corporate officer comports with due process. As discussed above, Sokoloff adequately alleges that Malik was a primary participant in the activities forming the basis of jurisdiction over Bio World, and he was a primary participant in the specific conduct that gave rise to this action. Thus, Malik has sufficient minimum contacts with Georgia to be subject to personal jurisdiction in this action. The Court denies Malik's 12(b)(2) motion to dismiss.

**II.  Should Any of Sokoloff's Claims Be Dismissed?**

Sokoloff asserts claims against Bio World and Malik under the FLSA, as well as claims against both Defendants for breach of contract and tortious interference with business expectancy. In addition, Sokoloff asserts a claim against Bio World for civil tax fraud.  Defendants did not move to dismiss the FLSA claim or the breach of contract claim, but they did move to dismiss the civil tax fraud claim and the tortious interference claim.  The Court addresses each claim in turn.

    A.   <u>Does Sokoloff State a Claim Under § 7434?</u>

26 U.S.C. § 7434 permits a civil action against a person who "willfully files a fraudulent information return with respect to payments purported to be made to any other person." 26 U.S.C. § 7434(a).  In support of this claim, Sokoloff alleges that Defendants willfully misclassified him as an independent contractor instead of an employee.  He further alleges that because of this misclassification, Bio World filed IRS Form 1099s reporting money paid to Sokoloff as non-employee wages, and Bio World did not pay employment taxes on the money it paid to Sokoloff.

Bio World moved to dismiss the § 7434 claim, contending that Sokoloff did not meet the pleading requirements of Federal Rule of Civil Procedure 9(b) because he did not allege any facts supporting a reasonable inference that Bio World willfully filed

8

a fraudulent information return with respect to the payments it made to Sokoloff. In support of this argument, Bio World relies on authority concluding that "liability under Section 7434 requires a misstatement of the *amount of payment*"—and does not create a private right of action for tax fraud where the alleged misrepresentation giving rise to the action is unrelated to the *amount of payments* the defendant reported paying to the plaintiff. *Tran v. Tran*, 239 F. Supp. 3d 1296, 1297 (M.D. Fla. 2017) (emphasis added). Sokoloff did not respond to this argument.

Again, § 7434(a) provides a cause of action against a person who "willfully files a fraudulent information return with respect to payments purported to be made to any other person." 26 U.S.C. § 7434(a). The key question is whether this statute creates a cause of action for an information return that is false or misleading in any respect, even if the return accurately reports the amount of money paid to the plaintiff, or if it only creates a cause of action if the information return is false or misleading as to the payment amounts reflected on the return. The Court has not located any appellate decisions that address this question.

Several district courts have analyzed the text of the statute and concluded that it does not create a claim for intentionally filing the wrong *form* (a 1099 instead of a W-2)

9

that includes the right *amount*. Rather, they concluded that § 7434 only creates a cause of action if the information return is false or misleading as to the payment amounts. *See, e.g., Liverett v. Torres Advanced Enter. Sols. LLC*, 192 F. Supp. 3d 648, 655 (E.D. Va. 2016); *Tran,* 239 F. Supp. at 1298; *Austin v. Metro Dev. Grp., LLC*, 571 F. Supp. 3d 1279, 1285-86 (M.D. Fla. 2021). *But see Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1298 (S.D. Fla. 2014) (concluding, without examining the statutory language, that a § 7434 claim could be based on filing the wrong tax form). The Court is persuaded by the well-reasoned analysis in *Liverett*, which was followed in *Tran* and *Austin*. The Court therefore holds that to state a claim for civil tax fraud under § 7434(a), the plaintiff must allege that the defendant willfully filed information returns that misrepresent the *amount of payments made*. Here, Sokoloff did not allege that Bio World misrepresented the amount of payments it made to him on the 1099s; he only alleged that they should have been Form W-2s instead of Form 1099s. Accordingly, Sokoloff fails to state a claim under § 7434, and the claim is dismissed.

    B.   <u>Does Sokoloff State a Claim for Tortious Interference?</u>

Turning to the tortious interference claim, Sokoloff asserts a "tortious interference with business expectancy" claim against both Bio World and Malik. Both Defendants seek to

10

dismiss that claim under Federal Rule of Civil Procedure 12(b)(6). In reviewing a 12(b)(6) motion to dismiss, the Court must accept the complaint's factual allegations as true and determine whether those factual allegations "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In support of his tortious interference claim, Sokoloff alleges that "a number of wholesale manufacture[r]s located in China" had business relationships to produce apparel for a "wide variety of business[es]," including Bio World. Am. Compl. ¶¶ 80-81, 86. Sokoloff claims that he "had longstanding business relationships with" the unnamed manufacturers and that after his employment with Bio World ended, Malik threatened to cease Bio World's business relationship with the manufacturers if they "engaged in business with Plaintiff or any Company for which Plaintiff worked." *Id.* ¶¶ 82, 86. After that, when Sokoloff discussed his "busines[s] relationship" with the manufacturers, the manufacturers told Sokoloff that "they could not enter into a busines[s] relationship with Plaintiff on account of Defendant Malik's threats to cease their business relationship." *Id.* ¶ 87.

Under Georgia law, the elements of a claim for tortious interference with business relations or potential business

11

relations are: "(1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant . . . caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff." *Tribeca Homes, LLC v. Marathon Inv. Corp.*, 745 S.E.2d 806, 808 (Ga. Ct. App. 2013) (quoting *Duke Galish, LLC v. Manton*, 662 S.E.2d 880, 884 (Ga. Ct. App. 2008)).

Defendants argue that Sokoloff did not adequately allege the first element because he did not allege that Defendants were strangers to the business relationships that are the subject of Sokoloff's tortious interference claim. If the alleged interferer is an agent of one of the parties to a contract or a third-party beneficiary of the contract, he is not a "stranger" to the contract and thus does not act "without privilege." *Atlanta Mkt. Ctr. Mgmt., Co. v. McLane*, 503 S.E.2d 278, 282 (Ga. 1998). Here, Defendants contend that the relevant business relationships are the relationships between Bio World and the manufacturers and that Defendants are not strangers to those relationships. Defendants misunderstand Sokoloff's claim. While Sokoloff alleges that he first learned about the manufacturers while he worked for Bio World, Sokoloff's claim in

12

this action is that *after he ended his employment* with Bio World, he attempted to enter a new business relationship on his own behalf with the manufacturers, separate from his prior work at Bio World. He further alleges that the manufacturers refused to do business with him because of Malik's actions. The Court therefore rejects Defendants' argument that Sokoloff failed to allege that Defendants were strangers to the potential business relationship that is the subject of Sokoloff's claim, and their motion to dismiss on this basis is denied. Defendants did not seek dismissal of the tortious interference claim on any other ground, so it remains pending.

**III. Should this Action Be Transferred?**

Defendants assert that once the Court decides the motions to dismiss, the Court should transfer this action to the United States District Court for the Northern District of Texas. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). There is no dispute that this action "might have been brought" in the Northern District of Texas, where Malik resides and where Bio World's principal place of business is. The next question is whether Defendants have met their burden of establishing that the Northern District of Texas is more convenient. *See In re Ricoh Corp.*, 870 F.2d 570, 573

13

(11th Cir. 1989) ("The federal courts traditionally have accorded a plaintiff's choice of forum considerable deference . . ., [so] in the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient.").

"Courts consider numerous factors in determining whether to transfer a case under § 1404(a)," including:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Frey v. Minter*, 829 F. App'x 432, 436 (11th Cir. 2020) (per curiam) (quoting *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)).

Here, none of the § 1404(a) factors weigh in favor of transfer. As to convenience of the witnesses (factor 1), most of Defendants' witnesses are employees of Bio World who reside in the Dallas, Texas area. The Northern District of Texas would be most convenient for them. But Sokoloff intends to call witnesses, including former Bio World employees, who live in Georgia, and the Middle District of Georgia would be most convenient for them. Thus, travel will inconvenience some

witnesses regardless of where this dispute is adjudicated, so the Court finds that factor 1 is neutral. For the same reason, convenience of the parties (factor 3) is neutral. Regardless of which forum adjudicates this action, either Bio World or Sokoloff will travel a long distance. Because travel will inconvenience one party either way, the Court finds this factor neutral.

As to the location of relevant documents (factor 2), Bio World argues that this factor weighs in favor of transfer because most of the relevant employment, tax, and other records are at Bio World's headquarters in Texas. Bio World does not argue that it maintains these documents only on paper instead of electronically. Due to the prevalence of electronic discovery, the Court finds that the location of the documents is largely insignificant. And, any documents Sokoloff has regarding his relationship with Bio World are in Georgia. If this factor remains relevant in the digital age, it is neutral because some documents are located in both venues.

The locus of operative facts (factor 4) is also neutral. Defendants argue that Texas is the locus of operative facts because Bio World is headquartered there. But Sokoloff's FLSA claims are about Bio World's decision to hire a Georgia worker who alleges that he was not properly paid for work he performed

15

in Georgia. Thus, there is no single locus of operative facts, and this factor is neutral.

Defendants contend that the availability of process to compel the attendance of unwilling witnesses (factor 5) weighs in favor of transfer because most of their witnesses live in Texas. Defendants did not point to any non-party, non-employee key witnesses whose testimony would have to be compelled. Rather, all the witnesses Defendants referenced in their briefs are Bio World employees or consultants, and Defendants have not shown that they are unwilling witnesses. Sokoloff, on the other hand, asserts that his witnesses are not employees and cannot be compelled to travel. The Court observes that those witnesses who cannot be compelled to travel to the Middle District of Georgia (or to the Northern District of Texas) can certainly be compelled to provide testimony by deposition in the district where they reside. This factor is neutral.

Turning to the relative means of the parties (factor 6), Defendants argue that this factor is neutral. Sokoloff is an individual, and Bio World is a corporation with hundreds of employees. Defendants do not seriously argue that the relative burden Sokoloff would face if the action were transferred is similar to the relative burden Defendants face if the case were not transferred. This factor does not weigh in favor of transfer.

16

The parties acknowledge that the forum's familiarity with the governing law (factor 7) is neutral because both this Court and the Northern District of Texas are equally capable of interpreting the law. Finally, trial efficiency and the interests of justice (factor 9) does not weigh in favor of transfer. This factor generally considers administrative issues associated with the efficient resolution of the case and whether the plaintiff's selected forum is related to the case. Defendants do not contend that this case can be more efficiently resolved in Texas. Rather, they argue that this factor weighs in favor of transfer because this action does not have a connection to Georgia. But, as discussed above, Sokoloff lives in Georgia, and he claims that he performed work in Georgia for which he was not properly paid. This factor does not weigh in favor of transfer.

The last factor is the weight accorded a plaintiff's choice of forum (factor 8). Traditionally, the courts give considerable deference to the plaintiff's choice of forum, and that choice should generally not be disturbed unless it is clearly outweighed by other considerations. *Robinson*, 74 F.3d at 260. This factor weighs strongly against transfer. Given that no factors weigh in favor of transfer, Sokoloff's choice of forum is not clearly outweighed by other considerations. Transferring this action to Texas would merely shift the

17

inconvenience from Defendants to Sokoloff, and the Court finds that Defendants have not carried their burden of convincing the Court that the § 1404(a) factors weigh strongly in favor of transfer.  The motion to transfer is denied.

## CONCLUSION

As discussed above, the Court denies Malik's motion to dismiss for lack of personal jurisdiction (ECF No. 32), grants Bio World's motion to dismiss Sokoloff's § 7434 tax fraud claim (ECF No. 33), denies Defendants' motions to dismiss the tortious interference claim (ECF Nos. 32 & 33), and denies Defendants' motions to transfer venue (ECF Nos. 8 & 12).

IT IS SO ORDERED, this 10th day of November, 2022.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA